# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

Aaron A. Gipson,                    :            Case No. 3:13cv1997
       Petitioner,          :
                                :
v.                              :
                                :            **MAGISTRATE'S REPORT AND**
Ed Sheldon, Warden,        :            **RECOMMENDATION**
       Respondent.          :

## I. INTRODUCTION

This case was automatically referred to the undersigned Magistrate Judge for report and recommendation pursuant to 72.2(b)(2) of the UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF OHIO LOCAL CIVIL RULES.  Pending are Petitioner's 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus, filed September 10, 2013 (Docket No. 1), Respondent's Return, filed January 29, 2014 (Docket No. 10), and Petitioner's Traverse, filed April 16, 2014 (Docket No. 14).  Given the filing date of the petition, the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. 104-132, 110 Stat. 1214 (1996), apply. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).

For the reasons set forth below, the Magistrate recommends that  the Court deny the Petition for Writ of Habeas Corpus.

## II. FACTUAL BASIS

In reviewing a writ of habeas corpus petition there is a presumption that the factual findings made by the state court are correct absent clear and convincing evidence. 28 U.S.C. § 2254(e)(1) (West 2014); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  Therefore, this Court adopts the facts set forth in the decision on Petitioner's direct appeal by the Court of Appeals of Ohio, Sixth District for Erie County, Ohio:

> In March 2008, appellant and an accomplice, Thomas Ricks, both of Detroit, Michigan, traveled to the Sandusky, Ohio residence of Chanel Harper, the sister of an area drug dealer, Calvin Harper, Jr. The underlying purpose of the trip to Ohio was for appellant to collect money owed for marijuana that appellant had previously supplied to Chanel. In conjunction with this, Chanel and appellant were also engaged in an intimate relationship at this time. Chanel was aware that her brother was actively involved in drug trafficking.

> At some point, appellant and Ricks left Chanel's home and returned to Michigan. The following morning, Chanel called appellant. Appellant indicated to her that he would be coming back to Sandusky later that day in order to deliver marijuana to her. At approximately 2:30 p.m., Calvin Harper went to his mother's house to pick up $3,000 in connection to a pending drug deal. After Harper had arrived back at his home with the funds, he phoned his neighbor, Rhonda Farris, and advised her to come by and pick up cash that she had previously asked to borrow.

> While at Harper's house to borrow money, Farris noticed two large stacks of money, totaling $20,000, sitting on Harper's stove. Farris observed that some of the money had apparently fallen onto the floor. Farris asked Harper if she could take that money as well. Harper refused to allow her to take the additional money. Farris returned next door to her residence. At approximately 5:00 p.m., Farris observed a man, whom she did not recognize, coming up her front steps. Farris later identified appellant as the man she had observed.[1] Farris next observed appellant turn around and walk up the sidewalk to Harper's adjacent house. Farris called Harper to warn him about the approaching stranger. Harper indicated that he was expecting this visitor. Harper replied to Farris, "Oh, he cool, he cool, that's my dude."

---

[1]

Farris testified that she later identified Thomas Ricks, not the appellant (Petitioner) (Docket No. 11, Attachment 5, p. 219 of 237).

2

Later that night Farris observed Ricks leaving Harper's house. Farris tried to call Harper. She received no answer. Harper's girlfriend, Jessica King, left Harper's house around 4:30 p.m. because Harper told her that he had a meeting with appellant and another party. Upon returning to Harper's around 10:00 p.m., King could not gain access to the house. All of the doors were locked.

The next morning Farris called Harper's mother to voice her concern about not being able to contact Harper. His mother told Farris to go to the house to check on him. She knew Farris had a way to get into the house. Upon gaining entry, Farris saw Harper lying on the floor and called for emergency assistance. In response to the call, detectives arrived on the scene. Harper had no pulse. It appeared that he had been dead for some time. Chanel disclosed to the officers that she believed that her drug dealer, appellant, was involved in the death of her brother. Appellant was located several days later. He was arrested in Canton, Michigan on armed robbery charges.

Appellant admitted that he had gone to Sandusky to engage in a drug transaction with Harper. However, appellant also claimed that while driving to Sandusky at approximately 5:15 p.m. he called Harper on his cell, changed the plans, turned around, and headed back towards Michigan. Although appellant's cell phone records do reflect a mobile call to Harper at 5:15 p.m., the cell records further reflect hits off two separate towers in Sandusky at 5:48 p.m. and 5:52 p.m., more than 45 minutes after appellant claimed to have left Sandusky. Thus, appellant's alibi does not comport with the objective evidence in the record.

*State v. Gipson*, 2012 WL 432851, *1-3 (Ohio 6th Dist. Ct. App. 2012).

### III. PROCEDURAL HISTORY

**A.    INDICTMENT**

Petitioner Aaron A. Gipson ("Petitioner") was indicted by an Erie County, Ohio Grand Jury during its January Term, May Session, on six counts, including two (2) counts of Aggravated Murder, two (2) counts of Aggravated Robbery, one (1) count of Trafficking in Marijuana, and one (1) count of Trafficking in Cocaine (Docket No. 10, Attachment 1, pp. 1-3 of 4). These charges were accompanied by two death penalty specifications for the aggravated murder charges, and an additional firearm specification (Docket No. 10, Attachment 1, pp. 1; 4 of 4).

3

On May 22, 2008, Petitioner pleaded not guilty to all counts contained in the Indictment (Docket No. 10, Attachment 5, p. 2 of 8).  On October 14, 2009, the State filed a Motion to Dismiss the Death Penalty Specifications, which the trial court granted on October 15, 2009 (Docket No. 10, Attachment 14 p. 1 of 65; Docket No. 10, Attachment 15, p. 1 of 1).

B.    TRIAL

On June 15, 2010, voir dire commenced for Petitioner's jury trial with opening statements starting on June 16, 2010 (Docket No. 11, Attachment 4, p. 1 of 270; Docket No. 11, Attachment 5, pp. 75; 111 of 237).  On June 22, 2010, the Jury found Petitioner guilty of one (1) count of Complicity to Aggravated Murder, one (1) count of Complicity to Aggravated Robbery, one (1) count of Complicity to Trafficking in Marijuana, and one (1) count of Complicity to Trafficking in Cocaine with specifications for the Marijuana and Cocaine charges (Docket No. 10, Attachment 57, pp. 1-15 of 16). The Jury acquitted Petitioner on the remaining charges (Docket No. 10, Attachment 57, pp. 1-15 of 16).

On July 8, 2010, Petitioner was sentenced to life in prison with eligibility for parole after 30 years on the Complicity to Aggravated Murder charge, 10 years imprisonment on the Complicity to Aggravated Robbery charge, 5 years imprisonment on the Complicity to Trafficking in Marijuana charge with the enhancement, and a mandatory sentence of 10 years for the Complicity to Trafficking Cocaine charge, which also included an enhancement (Docket No. 10, Attachment 60, pp. 2-5 of 8).  The sentences for the charges of Complicity to Aggravated Robbery, Complicity to Trafficking in Marijuana, and Complicity to Trafficking in Cocaine, were ordered to run concurrently with one another (Docket No. 10, Attachment 60, pp. 2-5 of 8).

4

C.    **DIRECT APPEAL**

On August 11, 2010, Petitioner, through appellate counsel, filed a timely notice of appeal

from the trial court's judgment and sentence entered July 13, 2010 (Docket No. 10, Attachment

61). On May 27, 2011, Petitioner filed his Brief with the Ohio Court of Appeals for the Sixth

Judicial District Erie County, Ohio ("Ohio appellate court" hereinafter), and alleged five[2]

assignments of error:

> (1)    Mr. Gipson's due process rights were violated as his convictions are
> against the manifest weight of the evidence.
>
> (2)    The evidence presented was insufficient to sustain a conviction and, as a
> matter of law, Mr. Gipson's conviction should be vacated.
>
> (3)    The court violated Mr. Gipson's due process rights under the 14th
> amendment and his right to the effective assistance of counsel under the
> 6th amendment by allowing testimony of an experiment that was not
> disclosed in discovery, prior to trial, to the defense.
>
> (4)    Mr. Gipson's due process rights were violated by the Sandusky Police's
> Destruction of "materially exculpatory" evidence in violation of his 5th and
> 14th Amendment protections.
>
> (5)    The trial court erred in denying Mr. Gipson's motion to suppress cell
> phone records in direct violation of Mr. Gipson's rights under the 4th and
> 14th Amendments to the Federal Constitution and Section 14, Article I of
> the Ohio Constitution.

(Docket No. 10, Attachment 62, p. 6 of 69). On August 5, 2011, the State filed its brief in

response, Petitioner filed his Reply Brief on August 17, 2011, and the State filed a Notice of

Supplemental Authority on November 1, 2011 (Docket No. 10, Attachment 63-65). On February

10, 2012, the appellate court affirmed the trial court's judgment (Docket No. 10, Attachment 66);

---

[2]

The appellate court's decision reflects that Petitioner withdrew a sixth assignment of error concerning a gun specification charge at oral argument. *State v. Gipson*, 2012 WL 432851, *1 (Ohio 6th Dist. Ct. App. 2012).

5

*State v. Gipson*, 2012 WL 432851 (Ohio 6th Dist. Ct. App. 2012).

On February 21, 2012, Petitioner, through his counsel, filed his Application for Reconsideration and Application for En Banc Consideration with the Ohio appellate court (Docket No. 10, Attachment 67). In his memorandum in support, Petitioner argued:

(1)     [The appellate court's] February 10, 2012 holding was in error because it ruled that Mr. Gipson's conviction was not against the manifest weight of the evidence and there was sufficient evidence while believing eyewitness testimony existed that placed Mr. Gipson at the murder scene.

(2)     [The appellate court] erred in ruling that cell phone record location data is not "content" and that citizens do not have a reasonable expectation of privacy in such "content."

(3)     Extraordinary circumstances make En Banc consideration appropriate

(Docket No. 10, Attachment 67, pp. 4-7 of 7). On March 1, 2012, the State filed its response and on March 6, 2012, the appellate court denied Petitioner's application (Docket No. 10, Attachment 68-69).

On March 23, 2012, Petitioner, through new appellate counsel, filed his Notice of Appeal and his Memorandum in Support of Jurisdiction with the Supreme Court of Ohio appealing the Ohio appellate court's opinion and judgment (Docket No. 10, Attachment 70-71). Petitioner's Memorandum in Support of Jurisdiction raised five propositions of law:

(1)     Gipson's Convictions Are Based on Insufficient Evidence in Violation of the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution.

(2)     Gipson's Convictions in this Case Are Against the Manifest Weight of the Evidence.

(3)     Gipson's Due Process Rights Were Violated by the State's Loss or Destruction of the Original Digital Recording of [Sandusky Police Department ("SPD")] March 19 Interview with Gipson, in Violation of Gipson's Rights Under the 5th and 14th Amendments.

6

(4)     The Trial Court Erred in Denying Gipson's Motion To Suppress Cell Phone Records and Cell Location Data in Direct Violation of Gipson's Rights Under the 4th and 14th Amendments of the U.S. Constitution and Section 14, Article I of the Ohio Constitution.

(5)     The Trial Court Violated Gipson's Due Process Rights Under the 14th Amendment and His Right to the Effective Assistance of Counsel Under the 6th Amendment by Allowing Testimony of an Experiment by the State's Expert that was not Disclosed to the Defense Prior to Trial.

(Docket No. 10, Attachment 71, pp. 1-2 of 33). On April 23, 2012, the State filed its

Memorandum in Opposition of Jurisdiction (Docket No. 10, Attachment 72).  On June 20, 2012,

the Supreme Court of Ohio dismissed Petitioner's appeal as not involving any substantial

constitutional question  (Docket No. 10, Attachment 72-73).

## D.     APPLICATION TO REOPEN APPEAL

On May 8, 2012, Petitioner, through counsel, filed an Application to Reopen his Direct

Appeal pursuant to OHIO APP. R. 26(B), for ineffective assistance of appellate counsel (Docket

No. 10, Attachment 74).  In support of his application, Petitioner asserted four supporting claims:

(1)     Gipson Was Denied His Constitutional Right To A Fair Trial By An Impartial Jury When The Trial Court Failed To Excuse For Cause Potential Jurors With Disqualifying Biases (Actual and/or Implied) And When This Failure Resulted In Gipson Being Tried Before A Jury That Included Biased Jurors.

(2)     Prosecutorial Misconduct Denied Gipson A Fair Trial and His Right to Due Process Because The State Relied In Gipson's Trial on an Inaccurate Timeline of Events that was Materially Different in Key Respects Than That Presented by the State in Gipson's Co-Defendants' Trial, Revealed in Police Reports, and/or as Found by the Appellate court in the Co-Defendant's Case.

(3)     Prosecutorial Misconduct During Closing Argument Denied Gipson A Fair Trial And His Right To Due Process In Violation Of The Fifth And Fourteenth Amendments To The U.S. Constitution And Section 10, Article I Of the Ohio Constitution.

7

     (4)     Gipson's Trial Counsel Was Ineffective for Not Including in the Trial
Record, and Not Developing and Arguing to the Jury, the Substantial Gaps
and Material Inconsistencies in the State's Case Against Gipson as
Revealed in testimony in Thomas Ricks' Trial, In the Police Reports of the
Investigation Provided in Discovery, and in the State's Own Exhibits.

(Docket No. 10, Attachment 74, pp 3-10 of 108).  On June 6, 2012, the State filed its response

opposing Petitioner's application and the appellate court (Docket No. 10, Attachment 76).  On

June 6, 2012, the appellate court issued its decision and judgment, finding Petitioner's

application without merit (Docket No. 10, Attachment 77, pp. 1-5 of 5).

     On July 19, 2012, Petitioner, through counsel, filed his Notice of Appeal and

Memorandum in Support of Jurisdiction with the Supreme Court of Ohio, appealing the

appellate court's denial of his application to reopen his direct appeal (Docket No. 10, Attachment

78).  In his brief, Petitioner raised five propositions of law:

     (1)     Prosecutorial Misconduct Denied Gipson A Fair Trial and His Right to
Due Process Because The State Relied In Gipson's Trial on an Inaccurate
Timeline of Events that was Materially Different in Key Respects Than
That Presented by the State in Gipson's Co-Defendants' Trial, Revealed in
Police Reports, and/or as Found by the Appellate court in the Co-
Defendant's Case.

     (2)     Prosecutorial Misconduct During Closing Argument Denied Gipson A
Fair Trial And His Right To Due Process In Violation Of The Fifth And
Fourteenth Amendments To The U.S. Constitution And Section 10,
Article I Of the Ohio Constitution

     (3)     Gipson's Trial Counsel Was Ineffective for Not Developing and Arguing
to the Jury the Substantial Gaps and Material Inconsistencies in the State's
Case Against Gipson as Revealed in Testimony in the Ricks' Trial, In the
Police Reports of the Investigation, and in the State's Own Exhibits.

     (4)     Gipson Was Denied His Constitutional Right To A Fair Trial By An
Impartial Jury When The Trial Court Failed To Excuse For Cause
Potential Jurors With Disqualifying Biases (Actual and/or Implied) And
When This Failure Resulted In Gipson Being Tried Before A Jury That
Included Biased Jurors.

(5)     Appellate Counsel Provided Ineffective Assistance To Gipson By Failing To Ensure There Was A Complete Record For Appeal And Also By Failing To Properly Raise Meritorious Constitutional Issues In Gipson's Direct Appeal, All In Violation Of The Fourteenth Amendment To The United States Constitution And Section 16, Article I Of The Ohio Constitution.

(Docket No. 10, Attachment 79, pp. 1-2 of 24). On August 14, 2012, the State filed its

Memorandum in Opposition of Jurisdiction (Docket No. 10, Attachment 80).  On September 26,

2012, the Supreme Court of Ohio dismissed Petitioner's appeal as not involving any substantial

constitutional question (Docket No. 10, Attachment 81).

## E.    PETITION FOR HABEAS CORPUS

On September 10, 2013, through counsel, Petitioner filed a petition for writ of habeas

corpus pursuant to 28 U.S.C. § 2254(d), asserting nine grounds for relief:

(1)     Gipson's Convictions Are Based on Insufficient Evidence in Violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

(2)     Gipson's Due Process Rights Were Violated by the State's Loss or Destruction of the Original Digital Recording of SPD's March 19 Interview with Gipson, in Violation of Gipson's Rights Under the 5th and 14th Amendments.

(3)     The State Court's Failure to Suppress Cell Phone Records and Cell Location Data Violated Gipson's Rights Under the 4th and 14th Amendments of the U.S. Constitution.

(4)     Gipson's Due Process Rights Under the 14th Amendment and His Right to Effective Assistance of Counsel Under the 6th Amendment Were Violated By State Trial Court's Allowance of Testimony of an Experiment by the State's Expert that was not Disclosed to the Defense Prior to Trial.

(5)     Gipson Was Denied His Constitutional Right To A Fair Trial By An Impartial Jury When The Trial Court Failed To Excuse For Cause Potential Jurors With Disqualifying Biases (Actual and/or Implied) And When This Failure Resulted in Gipson Being Tried Before A Jury That Included Biased Jurors.

9

(6)     Prosecutorial Misconduct Denied Gipson A Fair Trial and His Right to Due Process Because The State Relied In Gipson's Trial on an Inaccurate Timeline of Events that was Materially Different in Key Respects Than that Presented by the state in Gipson's Co-Defendants' Trial, Revealed in Police Reports, and/or as Found by the Ohio Appellate Court in the co-Defendant's Case.

(7)     Prosecutorial Misconduct During closing Argument Denied Gipson A Fair Trial And His Right To Due Process In Violation Of The Fifth And Fourteenth Amendments To The U.S. Constitution.

(8)     Gipson's Trial Counsel Was Ineffective for Not Developing and Arguing to the Jury the Substantial Gaps and Material Inconsistencies in the State's Case Against Gipson as Revealed in Testimony In the Ricks' Trial, In the Police Reports of the Investigation, and in the State's Own Exhibits.

(9)     Appellate Counsel Provided Ineffective Assistance To Gipson By Failing To Ensure There Was A Complete Record For Appeal And Also By Failing To Properly Raise Meritorious Constitutional Issues In Gipson's Direct Appeal, All In Violation Of The Fourteenth Amendment To The United States Constitution.

(Docket No 1, pp. 21-45 of 48).  On January 29, 2014, the State filed its Return of Writ opposing the Petition (Docket No. 10).  On April 16, 2014, Petitioner, through counsel, filed his Traverse (Docket No. 14).

## IV. ANALYSIS

### A.    PROCEDURAL REQUIREMENTS

Before the undersigned Magistrate can consider Petitioner's habeas claims, a determination must be made as to whether Petitioner has met the procedural requirements for each of these claims.  Procedural barriers such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, may operate to limit access to review on the merits of Petitioner's constitutional claims.  *See Daniels v. United States*, 121 S. Ct. 1578, 1582-1583 (2001).

1.     STATUTE OF LIMITATIONS

The AEDPA created a one-year statute of limitations for applications for writs of habeas corpus filed by state prisoners.  *Keeling v. Warden, Lebanon Correctional Institution*, 673 F.3d 452, 458 (6th Cir. 2012) *cert. denied*, 133 S.Ct. 141 (2012) (*citing* 28 U.S.C. § 2244(d)(1)).  The statute of limitations typically begins to run from the latest date on which the judgement became final by the conclusion of direct review or the expiration of the time for seeking such review. 28 U.S.C. § 2244(d)(1)(1) (West 2014).  The conclusion of direct review encompasses review by the United States Supreme Court.  *Lawrence v. Florida*, 127 S.Ct. 1029, 1082-1083 (2007).  A petitioner has 90 days to file a writ of certiorari with the United States Supreme Court. SUP. CT. R. 13. "Section 2244(d)(2) provides for statutory tolling of the limitations period during the pendency of properly filed motions for state post-conviction relief or other collateral review." *Keeling*, 673 F.3d at 458.

The expiration of the time for seeking review of Petitioner's judgment before the Supreme Court of the United States was on or about September 18, 2012.  Petitioner sought timely post-conviction relief, which would have tolled the statute of limitations, however; no such analysis is required since Petitioner filed his Petition on September 10, 2013 (Docket No. 1).  Accordingly, Petitioner's habeas claims are not barred by the statute of limitations.

2.     PROCEDURAL DEFAULT STANDARD OF REVIEW

"Procedural default is a threshold rule a court generally considers before reviewing the applicable law and available remedies in a habeas petition." *Lovins v. Parker*, 712 F.3d 283, 294 (6th Cir. 2013).  The procedural default rule requires that a Petitioner present and exhaust all available remedies in state court before bring a federal petition. *Id.*  Federal courts lack

11

jurisdiction to consider habeas claims not fairly presented to the state court. *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004) (citing *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

To be fairly presented for exhaustion purposes, the Petitioner must present "both the factual and legal basis for his claims to the state courts." *Hanna v. Ishee*, 694 F.3d 596, 606 (6th Cir. 2012)(quoting *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)(citation omitted).  In evaluating whether the claim has been properly presented, a habeas court may consider whether the petitioner:

> (1) reli[ed] upon federal cases employing constitutional analysis; (2) relied upon state cases employing federal constitutional analysis; (3) phras[ed] the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of specific constitutional right; or (4) alleg[ed] facts well within the mainstream of constitutional law.

*McMeans*, 228 F.3d at 681.  "The exhaustion requirement is satisfied when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).

In evaluating whether a claim is procedurally defaulted, the court applies a four-part test. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986).  Under *Maupin*, the court must determine: (1) whether there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) whether the state courts enforced the state procedural rule; (3) whether the state rule is an adequate and independent state ground on which the state can rely to foreclose federal review of a federal constitutional claim; and (4) whether there is cause and prejudice to excuse the default. *Id.* at 138.  "A state rule is independent if the state court *actually relies on it* to preclude a merits review." *James v. Brigano*, 470 F.3d 636, 640 (6th Cir. 2006)(quoting *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005)(alteration in

original).  To be adequate, "a state procedural rule must be 'firmly established and regularly followed' by the state courts at the time it was applied. *Beard v. Kindler*, 130 S.Ct. 612, 617 (2009).

In determining whether the first three *Maupin* factors are met, the federal court looks to the "last explained state court judgment." *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991). If the state court rendered its opinion based on the state procedural bar, default occurs. *Maupin*, 785 F.2d at 138.  If, on the other hand, the state court reached its opinion based on the merits of the claim, default does not occur and the federal habeas court may also consider the merits of the claim. *Id.*  A federal habeas court may still consider the merits of a procedurally defaulted claim if the petitioner demonstrates either: (1) there was cause for him not to follow the procedural rule and he was actually prejudiced by the alleged constitutional error; or (2) a fundamental miscarriage of justice will result from a bar of federal habeas review. *Id.*

Habeas grounds one through four of Petitioner's application are essentially the same presented to both the Ohio appellate court and again to the Supreme Court of Ohio (Docket No. 10, Attachment 62, p. 6 of 69; Docket No. 10, Attachment 71, pp 1-2 of 33; Docket No. 1, pp.21-45 of 48).   Habeas grounds five through nine of Petitioner's habeas petition were not raised in his direct appeal, however; Petitioner did properly present habeas ground nine to the Ohio appellate court in an application for post-conviction relief for ineffective assistance of appellate counsel (Docket No. 10, Attachment 74, pp. 3-10; Docket No. 1).

The State argues that grounds five through eight of Petitioner's habeas petition are procedurally defaulted based upon Ohio's doctrine of *res judicata* because Petitioner failed to raise those claims on direct appeal (Docket No. 10, p. 35-40 of 55). Petitioner disagrees and

argues that grounds five through eight of his petition were properly presented in his application to reopen his appeal for ineffective assistance of appellate counsel because the Ohio appellate court addressed those claims on their merits (Docket No. 14, p. 17-19 of 43).  Further, Petitioner argues that because the appellate court did not rely on or enforce any procedural barriers in their review of those claims, the Court is now precluded from doing so (Docket No. 14, p. 20 of 43).

Petitioner is mistaken.  The Ohio appellate court addressed Petitioner's supporting arguments, now asserted as grounds five through eight, in evaluating his post-conviction application for ineffective assistance of appellate counsel under OHIO APP. R. 26(B).  Pursuant to OHIO APP. R. 26(B), the appellate court cannot grant the application unless "there is a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal." Therefore, the Ohio appellate court could not have rendered a decision on the merits of the claims or procedurally barred them because doing so would have been beyond the scope of review permitted by the rule.

Since Petitioner failed to raise grounds five through eight in his direct appeal, those claims are procedurally defaulted.  These claims cannot be considered on their merits unless the Petitioner demonstrates: (1) cause for failing to adhere to the procedural rule and actual prejudice from the alleged constitutional error; or (2) a fundamental miscarriage of justice would result from a bar of federal habeas review. *Maupin*, 785 F.2d at 138.  Petitioner argues that his appellate counsel's failure to raise grounds five through eight on appeal as argued in habeas ground nine sufficiently demonstrates cause and prejudice excusing any procedural default of those claims (Docket No. 14, pp. 20-21 of 43).  Habeas ground nine, which alleges ineffective assistance of appellate counsel, is premised on the assumption that grounds five through eight

14

are meritorious (Docket No. 14, p. 40 of 43). Therefore, the undersigned Magistrate must address the merits of habeas ground nine before making a determination of whether there is cause and prejudice to excuse the procedural default under *Maupin*.

**B.      HABEAS STANDARD OF REVIEW**

A timely application for a writ of habeas corpus may not be granted unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. §§ 2254(d)(1), (2) (West 2014). A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently that [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)(quoting *Williams*, 529 U.S. at 412).

A decision is an unreasonable application of federal law "if the state court identifies the correct governing legal principles from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case. *Williams*, 529 U.S. at 412-13. In evaluating whether the State court has unreasonably applied federal law, the Supreme Court has noted that there is a distinction between an *incorrect* or *erroneous* application and an *unreasonable* application of federal law, which is what is required. *Williams*, 529 U.S. at 409-10.

A habeas court may grant the writ if the State court's application of federal law was "objectively unreasonable." *Rencio v. Lett*, 559 U.S. 766, 773 (2010)(quoting *Williams*, 529 U.S. at 409). "By its terms § 2254(d) bars relitigation of any claim "adjudicated on the merits" in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979)).

     **1.**    **GROUND ONE: THE SUFFICIENCY OF THE EVIDENCE IN SUPPORT OF THE CONVICTIONS**

In Petitioner's first ground for habeas relief he alleges that his convictions for Complicity to Aggravated Murder and Complicity to Aggravated Robbery are supported by insufficient evidence in violation of his constitutional right of due process (Docket No. 1; pp. 21-28 of 48; Docket No. 14, pp. 1-11 of 43). Petitioner argues that the State's case against him is entirely circumstantial and that such evidence amounts to reasonable speculation insufficient to support his convictions (Docket No. 1, p. 23 of 48; Docket No. 14, p. 8; 11 of 43). The State disagrees and argues that circumstantial evidence is sufficient to support a state conviction citing the standards set forth in *Jackson v. Virginia*, and the AEDPA (Docket No. 10, p. 23 of 55).

The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits a State from convicting a person of a crime without proving the elements of that crime beyond a reasonable doubt. *Fiore v. White*, 531 U.S. 225, 228-29 (2001). When a habeas claim concerns the sufficiency of the evidence, the Court must assess "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have

16

found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319;

*O'Neal v. Bagley*, 743 F.3d 1010, 1019 (6th Cir. 2013)(citation omitted).

Petitioner was convicted of Complicity to Aggravated Murder, in violation of OHIO REV.

CODE § 2903.01(B), and § 2923.03(A)(2) (Docket No. 10, Attachment 60, p. 3 of 8). "To support

a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence

must show that the defendant supported, assisted, encouraged, cooperated with, advised, or

incited the principal in the commission of the crime, and that the defendant shared the criminal

intent of the principal." *State v. Jackson*, 863 N.E.2d 223, 226 (Ohio 6th Dist. Ct. App.

2006)(citation omitted). Aggravated Murder under OHIO REV. CODE § 2903.01(B), provides, in

relevant part: "[n]o person shall purposely cause the death of another . . . while committing or

attempting to commit, or while fleeing immediately after committing or attempting to commit . .

. aggravated robbery . . . in a habitation when a person is present or likely to be present,

terrorism, or escape." *Id.*  "Purpose (i.e., intent) to kill is an essential element of aggravated

murder." *State v. Herring*, 762 N.E.2d 940, 947 (Ohio 2002).

Petitioner was also convicted of Complicity to Aggravated Robbery, in violation of OHIO

REV. CODE § 2911.01(A)(1) and § 2923.03(A)(2).  Aggravated Robbery under OHIO REV. CODE

§ 2911.01(A)(1), provides: "[n]o person, in attempting or committing a theft offense . . . or in

fleeing immediately after the attempt or offense, shall . . . have a deadly weapon on or about the

offender's person or under the offender's control and either display the weapon, brandish it,

indicate that the offender possesses it, or use it." *Id.*  To establish Complicity, "the evidence must

show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the

principal in the commission of the crime, and that the defendant shared the criminal intent of the

principal." *Jackson*, 863 N.E.2d at 226. "Such intent may be inferred from the circumstances

17

surrounding the crime." *Id.*

The State appellate court rejected Petitioner's claims concerning the sufficiency of the evidence, finding "the record contains ample evidence in support of conviction." *Gipson*, 2012 WL 432851, *3. The appellate court observed that the State presented "extensive cell phone records that carefully tracked the [Petitioner's] whereabouts throughout the night," and that the witnesses in the case "included numerous police officers and experts which the jury ultimately concluded credible and sufficient for conviction." *Id.* The court also responded to Petitioner's characterization of the State's witnesses as a "slew of drug dealing family members," noting they were "willing to reveal their own unlawful conduct in the course of this matter could reasonably be perceived as indicia of their credibility." *Id.*

The Supreme Court has held that the circumstantial evidence is sufficient to support a conviction as long as the jury is convinced beyond a reasonable doubt. *See Holland v. United States*, 348 U.S. 121, 140 (1954); *see also Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003)("we have never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even through proof beyond a reasonable doubt is required"). At Petitioner's trial the State presented testimony from approximately eighteen witnesses during their case-in-chief (Docket No. 11, Attachment 5-8). The defense offered testimony from three additional witnesses during its case-in-chief (Docket No. 11, Attachment 8, pp. 199-246 of 267).

Based on the testimony from Harper's mother, sister, girlfriend, and neighbor, the evidence establishes that on the day of robbery and murder, Harper was planning to meet with Petitioner and another individual to buy drugs (Docket No. 11, Attachment 5, p. 225 of 237; Docket No. 11, Attachment 6, pp. 101; 162-163 of 245). Petitioner's phone records and cell tower data show multiple calls with Harper on March 11 and confirm Petitioner's travel from

Canton, Michigan to Sandusky, Ohio (Docket No. 11, Attachment 6, pp. 207-211; 212; 214-215; 218-226 of 245). At 5:15 p.m. phone records reflect Petitioner's cell phone registered with a cell tower near Port Clinton, Ohio (Docket No. 11, Attachment 6, p. 215 of 245). At 5:18 p.m. Harper called his neighbor, Rhonda Farris, to come over to his house to get the money that she had asked to borrow from him earlier in the day and Farris observed Harper preparing $20,000 (Docket No. 11, Attachment 5, pp. 223-226 of 237). After returning home, Farris called Harper at approximately 5:42 p.m. to alert him that an unknown man, later identified as Thomas Ricks, had knocked on her door looking for Harper, but Harper advised that he was expecting the man (Docket No. 11, Attachment 5, pp. 220; 222-223 of 237). At 5:48 p.m. Petitioner's phone registered on a tower at Bell and Campbell street in Sandusky, which Detective Wichman testified is approximately one-half mile from Harper's residence (Docket No. 11, Attachment 6, pp. 220-221; 64-65 of 245). At 5:52 p.m. Petitioner's phone registered a phone call with a cell tower near State Route 2 and consistent with heading out of town (Docket No 11, Attachment 6, pp. 221; 64-65 of 245).

After reaching the State of Michigan, Detective Wichman testified that Petitioner called the drug supplier he owed money, his girlfriend, and then his mother, who Petitioner had informed detectives was threatened by the drug supplier earlier on March 11 (Docket No. 11, Attachment 6, pp. 213; 224-225; Docket No 11, Attachment 7, p. 191 of 230). Cell tower location information concerning Petitioner's calls reflect that Petitioner returned to an area in Detroit where Ricks lived before heading downtown to the casino where he was captured on surveillance video at 8:13 p.m. (Docket No. 11, Attachment 6, pp. 226-227 of 245; Docket No. 11, Attachment 7, pp. 138 of 230).

Harper's body was discovered on the morning of March 12, 2008, and an investigator

processing the crime scene testified she recovered a drug scale located beside Harper's body (Docket No. 11, Attachment 7, p. 227 of 230).  Two days later on March 14, 2008, Petitioner changed his cell phone number for the second time during the month of March (Docket No. 11, Attachment 6, pp. 243-244 of 245; Docket No. 11, Attachment 8, p. 150 of 267).  Chanel Harper testified that prior to her brother's murder she had spoken to Petitioner as frequently as ten times a week, that the two had shared an intimate relationship, and he had supplied  her with marijuana but after his death, Petitioner had stopped taking or returning her calls (Docket No. 11, Attachment 5, pp. 171-173; 191-192 of 237).  Chanel noted calling Petitioner's cell phone at least 16 times on March 12 (Docket No. 11, Attachment 5, pp. 191-192 of 237).

Viewing the evidence in a light most favorable to the State, the evidence, albeit circumstantial, is sufficient to support Petitioner's convictions.  The undersigned Magistrate finds no basis to grant Petitioner habeas relief under § 2254(d).

### 2.    GROUND TWO: THE DESTRUCTION OF EXCULPATORY EVIDENCE

In ground two of Petitioner's habeas petition he alleges that his rights were violated by the State when the digital recording of his March 19, 2008 interview with Detectives Wichman and Volz was lost (Docket No. 1, p. 28 of 48).  Petitioner disputes a number of assertions made by detectives in their testimony concerning Petitioner's interview from March 19, 2008 (Docket No. 14, pp. 12-13 of 43).  Petitioner argues that the lost recording of the interview is exculpatory evidence and that the destruction of such evidence is inexcusable misconduct in violation of his right to due process (Docket No. 1, pp. 28-30 of 48; Docket No. 14, p. 12-15 of 43).  The State disagrees and argues that the Ohio appellate court's decision that Petitioner failed to meet his burden was neither contrary to nor an unreasonable application of Supreme Court precedent or an unreasonable determination of the facts as required for habeas relief (Docket No. 10, pp. 27-

20

30 of 55).

The Supreme Court has noted that the Due Process Clause of the Fourteenth Amendment requires that criminal prosecutions comport with "prevailing notions of fundamental fairness." *California v. Trombetta*, 467 U.S. 479, 485 (1984). This standard of fairness "require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense." *Id.* The prosecution's duty to disclose evidence favorable to the defense is governed by *Brady v. Maryland*, 373 U.S. 83, 84 (1963), which held that "the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material to either guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. *Id.* at 87. The state has a duty to disclose evidence favorable to a criminal defendant where such evidence is material to guilt or to punishment. *United States v. Agurs*, 427 U.S. 97, 111 (1975)

In *California v. Trombetta*, the Supreme Court addressed the issue of whether the Fourteenth Amendment requires the State to preserve potentially exculpatory evidence on behalf of defendants holding:

> "Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense . . . [t]o meet this standard of constitutional materiality, evidence must possess an exculpatory value that was apparent before the evidence was destroyed and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."

*Trombetta*, 467 U.S. at 481, 488-489 (citation omitted). In a subsequent case, *Arizona v. Youngblood*, 488 U.S. 51, 52 (1988), the Supreme Court considered whether the State's failure to preserve evidentiary material which might have exonerated the defendant holding that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially

useful evidence does not constitute a denial of due process of law. *Id.* at 58.

The State appellate court found that Petitioner's claim was not well-taken, noting Petitioner had failed to demonstrate that the lost interview was exculpatory in nature, destroyed in bad faith, and observed that the officers who conducted the interview were available for cross examination. *Gipson*, 2012 WL 432851, *4. At trial, SPD Detectives Wichman and Volz gave testimony concerning the circumstances of the lost digital recording of their interview with Petitioner on March 19, 2008 at the Canton, Michigan Police Department ("CPD" hereinafter). Both detectives testified that the room they interviewed Petitioner in at CPD was not equipped with audio recording capabilities and so they took a digital recorder with them to use during the interview (Docket No. 11, Attachment 6, pp. 236-237 of 245; Docket No. 11, Attachment 7, p. 191 of 230). The two detectives gave testimony that the room had poor acoustics and contained an air duct and exhaust fan, which were located over the table where the interview took place (Docket No. 11, Attachment 6, p. 237 of 245; Docket No. 11, Attachment 7, p. 191 of 230). Detective Wichman explained that after returning to SPD he played the tape, but could not understand anything said because the audio was drown out by the air duct (Docket No. 11, Attachment 6, p. 237 of 245). Detective Wichman did note, however, that he had reviewed a later interview of Petitioner conducted by Sergeant Orzech and that it was consistent with what he had learned during his interview (Docket No. 11, Attachment 6, p. 238 of 245).

Petitioner fails to establish that the contents of the lost tape contained exculpatory evidence, or that SPD's loss of the recording of the interview was anything more than negligence. Therefore, the undersigned Magistrate finds the State appellate court's decision was neither contrary to nor an objectively unreasonable application of Supreme Court precedent or an unreasonable determination of the facts under § 2254(d).

22

**3.** **GROUND THREE: FAILURE TO SUPPRESS CELL PHONE RECORDS AND CELL LOCATION DATA**

In habeas ground three, Petitioner alleges that the State's use of a subpoena to obtain his cell phone records and cell site location data was in violation of his rights under the Fourth and Fourteenth Amendments and that the trial court should have granted his motion to suppress (Docket No. 1, p. 30 of 48).  Petitioner argues that he has a reasonable expectation of privacy in the electronic data stored on his cell phone and the corresponding cell site location data and that the State should have obtained a warrant for these records (Docket No. 1, p. 31 of 48).  The State argues that this claim is not cognizable in these proceedings because Ohio's procedural mechanism afforded Petitioner an opportunity to fully and fairly litigate his claim (Docket No. 10, p. 32-33 of 55).

Since Petitioner has properly presented and exhausted this claim in State Court, the habeas court may consider the merits of the claim subject to the limitations in § 2254(d). *See Manning*, 912 F.2d at 881; 28 U.S.C. § 2254(d) (West 2014); *Williams*, 529 U.S. at 412-13.  The Supreme Court has recognized a "general rule that the issuance of a subpoena to a third party to obtain the records of that party does not violate the rights of a defendant, even if a criminal prosecution is contemplated at the time of the subpoena is issued." *United States v. Miller*, 425 U.S. 435, 444 (1976).  Petitioner's contention that he has a legitimate expectation of privacy in his cell phone records and cell location data is guided by the Supreme Court's decision in *Katz v. United States*, 389 U.S. 347, 348 (1967).

"Consistently with *Katz*, [the United States Supreme Court] uniformly has held that the application of the Fourth Amendment depends on whether the person invoking its protection can

23

claim a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by government action." *Smith v. Maryland*, 442 U.S. 735, 740 (1979)(quotation marks and citations omitted). This inquiry is broken down into two questions: 1) whether the individual has "exhibited an actual (subjective) expectation of privacy;" and 2) whether the "individual's subjective expectation of privacy is one that society is prepared to recognize as reasonable," or "justifiable" under the circumstances. *Id.* (citing *Katz*, 389 U.S. at 361, 353). In *Smith v. Maryland*, the Supreme Court held that the installation of a pen register device by a telephone company at the request of police to record the numbers dialed from a defendant's house was not a "search" within the meaning of the Fourth Amendment because there is no legitimate expectation of privacy in information voluntarily turned over to third parties. *Smith*, 442 U.S. at 742-45.

Petitioner argues that the State's use of cell site location data is analogous to GPS technology and a "search" based on the Supreme Court's recent decision in *United States v. Jones*, 132 S.Ct. 945 (2012). Petitioner is mistaken. In *Jones*, the Supreme Court held that a person's vehicle is an "effect" under the Fourth Amendment and that the government's physical occupation of a person's vehicle with a GPS tracking device for the purpose of gathering information was a "search" within the meaning of the Fourth Amendment. *Jones*, 132 S.Ct. at 949. Petitioner's case presents no such facts of any physical intrusion and therefore is not analogous.

The State appellate court denied Petitioner's claim that the trial court erred in denying his motion to suppress relying on *Smith v. Maryland,* and precedent from this district, to hold that there is no reasonable expectation in cell phone records or cell site location information. *Gipson*,

2012 WL 432851, *5.  The undersigned Magistrate finds no reason to upset the State appellate

court's determination under § 2254(1) or (2).

### 4.   GROUND FOUR: NON-DISCLOSURE OF STATE EXPERT'S EXPERIMENT BEFORE TRIAL

Petitioner's fourth habeas ground alleges that his rights to a fair trial, due process, and

effective assistance of counsel were violated by the State trial court's decision to allow testimony

concerning an experiment by the State's expert witness that was not disclosed to the defense

prior to trial pursuant to OHIO CRIM. R. 16 (Docket No. 1, p. 23-33 of 48; Docket No. 14, pp. 16-

17 of 43).  The State disagrees, citing circuit precedent to argue that Petitioner's claim is not

cognizable under habeas review because it relies upon OHIO CRIM. R. 16 (Docket No. 10, p. 33

of 55).  The State's contention is well taken since Petitioner's claim is not a constitutional

violation.  *See Hicks v. Collins*, 384 F.3d 204, 220 (6th Cir. 2004); *Lorraine v. Coyle*, 291 F.3d

416, 441 (6th Cir. 2002); 28 U.S.C. § 2254(a) (West 2014). "[T]he Supreme Court has

consistently held that 'there is no general constitutional right to discovery in a criminal case.'"

*Id.* (citing *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988)(quoting *Weatherford v.

Bursey*, 429 U.S. 545, 559 (1977)).

### 5.   GROUND NINE: INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

In Petitioner's ninth ground for habeas relief, he alleges ineffective assistance of

appellate counsel for failing to raise the constitutional issues he now raises as discrete claims in

habeas grounds five through eight (Docket No. 1, pp.45-47 of 48; Docket No. 14, pp. 40-42 of

43).  The State disagrees and contends that the State appellate court's findings that Petitioner's

claims are without merit was appropriate (Docket No. 10, pp. 53-54 of 55).

The State appellate court's decision is afforded AEDPA deference under 28 U.S.C. §

25

2254(d).  In evaluating whether to grant an application to reopen under OHIO APP. R. 26(B), Ohio courts apply the two-pronged analysis from *Strickland v. Washington*, in order to assess whether the appellant has raised a "genuine issue" as to the ineffectiveness of his appellate counsel. *State v. Bryant-Bey*, 776 N.E.2d 480, 481 (Ohio 2002)(citing *State v. Sheppard*, 774 N.E.2d 770 (Ohio 2001); *State v. Spivey*, 701 N.E.2d 696 (1998); *State v. Reed*, 660 N.E.2d 456 (1996)). "To show ineffective assistance, [defendant] must prove that his counsel [was] deficient for failing to raise the issues he now presents and that there was a reasonable probability of success had he presented those claims on appeal." *Bryant-Bey*, 776 N.E.2d at 481 (citation omitted).  The applicant "bears the burden of establishing that there was a genuine issue as to whether he has a colorable claim of ineffective assistance of counsel on appeal." *Id.* at 482.

### a.  IMPARTIAL JURY

Petitioner's first alleges, in support of his ineffective assistance of appellate counsel claim, that his appellate counsel was ineffective in his direct appeal for failing to raise a constitutional claim that his rights to a fair and impartial jury were violated by the State trial court's denial of for-cause exclusions for jury bias (Docket No. 1, p. 34-35 of 48; Docket No. 14, 22-26 of 43). The State contends that the record is devoid of any evidence of jury bias or compromised impartiality of the jury (Docket No. 10, pp. 39-40 of 55).

In *Irvin v. Dowd*, 366 U.S. 717 (1961), the Supreme Court noted:

[T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors. . . . . [A] juror must be as indifferent as he stands unsworne [sic]. . . . [h]is verdict must be based upon the evidence developed at trial . . . regardless of the heinousness of the crime charged, the apparent guilt of the offender or the state in life which he occupies. . . . [A] juror who has formed an opinion cannot be impartial.

It is not required, however, that the jurors be totally ignorant of the facts and issues

> involved. In these days of swift, widespread and diverse methods of
> communication, an important case can be expected to arouse the interest of the
> public in the vicinity, and scarcely any of those best qualified to serve as jurors
> will not have formed some impression or opinion as to the merits of the case. This
> is particularly true in criminal cases. To hold that the mere existence of any
> preconceived notion as to the guilt or innocence of an accused, without more, is
> sufficient to rebut the presumption of a prospective juror's impartiality would be to
> establish an impossible standard. It is sufficient if the juror can lay aside his
> impression or opinion and render a verdict based on the evidence presented in
> court.

*Id.* at 722-723 (citations omitted). The question of juror partiality is a question of mixed law and

fact. *Reynolds v. United States*, 98 U.S. 145, 156 (1878). "[T]he test is whether the nature and

strength of the opinion formed are such as in law necessarily . . . raise the presumption of

partiality. *Irvin*, 366 U.S. at 723. As the Supreme Court recognized in *United States v. Wood*, 299

U.S. 123 (1936):

> Impartiality is not a technical conception. It is a state of mind. For the
> ascertainment of this mental attitude of appropriate indifference, the Constitution
> lays down no particular tests and procedure is not chained to any ancient and
> artificial formula. State courts enforcing similar requirements of state constitutions
> as to trial by jury have held that legislatures enjoy a reasonable freedom in
> establishing qualifications for jury service . . .

*Id.* at 145-146. Findings of the trial court concerning a prospective juror opinion are afforded

deference "unless the error is manifest." *Irvin*, 366 U.S. at 724 (citing *Reynolds*, 98 U.S. at 156).

A reviewing court must "independently evaluate the voir dire testimony of the impaneled jurors."

*Id.*

The State appellate court found Petitioner's allegations of partiality wholly conclusory and

that he had failed to provide any objective evidence that the impartiality of the jury had been

compromised (Docket No. 10, Attachment 77, p. 3 of 5). The record supports the State appellate

court's decision. While Juror Springer indicated knowing the Prosecutor and that the Prosecutor

had credibility with him, Springer also noted that he could decide the case based upon the evidence presented (Docket No. 11, Attachment 4, pp. 52-53; 121-123 of 270). Juror Milner disclosed that an investigator employed by the Prosecutor's office is her first cousin once removed, but that she did not see the investigator often, and had no idea that he worked in Prosecutor's office until that day (Docket No. 11, Attachment 5, pp. 16-18 of 237). The transcript does not indicate that Ms. Milner harbored any bias, opinions, or would be unable to decide the case based upon the evidence (Docket No. 11, Attachment 5, pp. 19-25 of 237). Juror Lococo indicated during jury selection that he knew Detective Volz and Sergeants Orzech and Braun casually, but could put aside those relationships, give Petitioner the presumption of innocence, and hold the State to their burden of proof (Docket No. 11, Attachment 5, pp. 50; 53; 57 of 237). Juror Velliquette disclosed that Detective Prosowski, one of the investigators assigned to the case, is her neighbor, that she is a good detective and speaks the truth (Docket No. 11, Attachment 5, pp. 36-38 of 237). Mr. Velliquette indicated that he had discussed the case with Detective Prosowski, explaining that the day after it happened he asked her about the case (38-39 of 237). In response to the trial court's inquiry, Mr. Velliquette informed the trial judge that since that time he had not discussed the case (Docket No. 11, Attachment 5, pp. 42-43 of 237). Furthermore, the transcript reflects that Mr. Velliquette's responses to questions establish that he could give Petitioner the presumption of innocence and return a not guilty verdict if there was insufficient evidence (Docket No. 11, Attachment 5, pp. 43-45 of 237). Juror Fox did not actually sit on the jury, because the Defense asked that he be excused with one of their peremptory challenges (Docket 11, Attachment 5, p. 64 of 237).

Since Petitioner and the record fail to support Petitioner's claims of jury bias, it follows

that his appellate counsel was not ineffective for failing to raise such a claim.  Therefore, the undersigned Magistrate finds the supporting claim without merit.

### b.    Prosecutorial Misconduct: The Time Line Presented At Trial

Petitioner next alleges that his appellate counsel was ineffective on his direct appeal for failing to raise a constitutional claim alleging violations of his rights to a fair trial and due process (Docket No. 1, p. 21 of 48; Docket No. 14, p. 27 of 43).  Petitioner argues that his right to due process was denied when the prosecutor presented testimony known to be false, and failed to correct such testimony when it was offered (Docket No. 1, p. 36 of 48).  In support, Petitioner contrasts the testimony of Rhonda Farris at Petitioner's trial that Ricks knocked on her door at approximately 5:42 p.m. with testimony Farris gave during Ricks' trial that Ricks had mistakenly knocked on her door sometime between 4 p.m. and 5 p.m.(Docket No. 14, pp. 27-28 of 43).  The State disputes Petitioner's allegations and contends that Petitioner has failed to establish that Farris' testimony at his trial was false or that the prosecutor knew it was false (Docket No. 10, p. 40 of 55).

The State appellate court's decision notes that Petitioner's assertions stem from the rejection of his alibi defense at trial within the context of more credible evidence and furthermore, that Petitioner's arguments concerning the credibility of witnesses had been exhaustively reviewed, considered and rejected by the court (Docket No. 10, Attachment 77, p. 4 of 5).

The Supreme Court "has consistently held that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976)(citations omitted).  Such a standard does not "automatically

require a new trial whenever a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict." *Giglio v. United States*, 405 U.S. 150, 154 (1972)(citations omitted). "The burden is on the defendants to show that the testimony was actually perjured, and mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony." *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998)(quoting *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989)).

Petitioner has failed to demonstrate that Farris' testimony at his trial was false, and therefore cannot perfect his claim for prosecutorial misconduct. Petitioner's entire argument is premised on his assumption that Farris' testimony at Ricks' trial was accurate, which he also fails to substantiate (Docket No. 1, pp. 36-41 of 48; Docket No. 14, pp. 27-34 of 43). Since Petitioner has failed to establish any constitutional error, it follows that his appellate counsel was not ineffective for failing to raise such a claim and therefore the undersigned Magistrate finds the supporting claim without merit.

### c. PROSECUTORIAL MISCONDUCT: CLOSING ARGUMENTS

Petitioner's third argument in support of his ineffective assistance of appellate counsel claim alleges his appellate counsel was ineffective in his direct appeal for failing to raise a constitutional claim that his rights to a fair trial and due process were violated by the Prosecutor's remarks during closing arguments (Docket No. 1, p. 41 of 48; Docket No. 14, p. pp. 34-37 of 43). The State argues that the Prosecutor's remarks during closing arguments did not rise to such a level that they "infected the trial with unfairness" to make his conviction a violation of due process and that any prejudice was cured by the trial court's instruction (Docket No. 10, pp. 43-52 of 55).

In their decision, the State appellate court addressed both of Petitioner's prosecutorial misconduct claims finding the claims had been previously reviewed and rejected (Docket No. 10, Attachment 77, p. 4 of 5).  In Ohio, the test for prosecutorial misconduct during closing arguments is "whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." *State v. Powell*, 971 N.E.2d 865, 894 (Ohio 2012)(citation omitted).  "Prosecutors are granted wide latitude in closing argument, and the effect of any conduct of the prosecutor during closing argument must be considered in light of the entire case to determine whether the accused was denied a fair trial." *Id.* "The touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *Id.* (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).

While the record shows that the Prosecutor repeatedly characterized the evidence as "overwhelming," during his closing arguments, Petitioner does not cite and the undersigned is unaware of any Ohio precedent finding such statements improper and prejudicial.  Furthermore, the State appellate court's decision characterized the record as containing "ample evidence in support of conviction." *Gipson*, 2012WL 432851, *3.  Petitioner also fails to cite any legal precedent which would support his other allegations of improper statements made by Prosecutor Baxter during his closing arguments.  Accordingly, the undersigned Magistrate finds Petitioner's supporting claim without merit

### d.    INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Finally, Petitioner alleges ineffective assistance of appellate counsel in his direct appeal for failing to raise a constitutional claim that his trial counsel was ineffective because he did not introduce transcripts of testimony from Co-Defendant Thomas Ricks' trial (Docket No. 1, pp. 43-

31

44 of 48; Docket No. 14, pp. 37-39 of 43).  Petitioner argues that there was no reasonable strategic reason for not exposing the inconsistencies in the State's time line as addressed in his prosecutorial misconduct supporting argument and concludes that but for these errors the outcome at trial would have been different (Docket No. 1, p. 44 of 48).  Petitioner also contends he is entitled to an evidentiary hearing under 28 U.S.C. § 2254(e) (Docket No. 14, p. 39 of 43).  The State disagrees and argues that Petitioner's claim lacks merit and may not be relied upon to excuse procedural defaults of other claims (Docket No. 10, p. 53 of 55).

The State appellate court noted that Petitioner's claim stems from similar addressed disputes concerning witness credibility already considered and rejected by the court (Docket No. 10, Attachment 77, pp. 4-5 of 5).  The appellate court found no objective evidence establishing a different outcome at trial but for the alleged errors of counsel and determined that Petitioner's appellate counsel was not ineffective for failing to raise a constitutional claim that trial counsel was ineffective (Docket No. 10, Attachment 77, pp. 4-5 of 5).

Petitioner bears the burden of establishing that his trial counsel rendered ineffective assistance of counsel. *State v. Hunter*, 960 N.E.2d 955, 968 (Ohio 2011)(citing *Strickland*, 466 U.S. at 687).  To show ineffective assistance of trial counsel, the defendant must show, "first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant a fair trial." *State v. Frazier*, 873 N.E.2d 1263, 1284 (Ohio 2007)(citing *Strickland*, 466 U.S. at 687).  To be deficient, a defendant must show that "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.  A convicted defendant must identify specific acts or omissions of counsel that were outside the range of professionally competent assistance.

32

*Strickland*, 466 U.S. at 690.  There is a strong presumption that counsel has "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

At Petitioner's trial the State relied upon the cell phone records of both Petitioner and Harper to build their time line and theory of the case.  Rhonda Farris' testimony was used in conjunction with Harper's phone records to show a more precise time line of when she was at Harper's house and when she called to alert Harper about Ricks since both events coincided with phone calls between her and Harper (Docket No. 11, Attachment 5, pp. 220; 225 of 237).  The focus of the State's case during Ricks' trial was also on Petitioner and Harper's cell phone records and the same timing of calls as noted by the factual summaries in the decisions of both the State appellate court and Supreme Court of Ohio.  *See State v. Ricks*, 995 N.E.2d 1181, 1184 (Ohio 2013); *State v. Ricks*, 965 N.E.2d 1018, 1021 (Ohio 6th Dist. Ct. App. 2011).  Petitioner has failed to demonstrate how emphasizing inconsistencies in Farris' testimony about the exact timing of Ricks' knock on her door was constitutionally deficient or how the alleged error would have affected the outcome at trial given the State's reliance upon the time stamped phone records to show the timing of those events.  Accordingly, the undersigned Magistrate finds Petitioner's supporting claim without merit.

Since Petitioner has failed to substantiate any of his supporting claims for ineffective assistance of appellate counsel, the undersigned Magistrate finds no basis under § 2254(d) to disturb the State appellate court's judgment.

**6.    HABEAS GROUNDS FIVE THROUGH EIGHT ARE PROCEDURALLY BARRED**

Having evaluated habeas ground nine, the undersigned Magistrate must return the *Maupin*

analysis for grounds five through eight to determine whether there is cause and prejudice, or a fundamental miscarriage of justice which would excuse the procedural default permitting the undersigned Magistrate to review these claims on the merits. *See Cvijetinovic v. Eberlin*, 618 F.3d 833, 837 (6th Cir. 2010)("A defendant can overcome a procedural default by showing (a) cause for the default and (b) actual prejudice from it.")(citation omitted). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). "Such factors may include 'interference by officials,' attorney error rising to the level of ineffective assistance of counsel, and 'a showing that the factual or legal basis for a claim was not reasonably available.'" *Cvijetinovic*, 617 F.3d at 837 (quoting *Hargrave-Thomas v. Yukins*, 374 F.3d 383, 388 (6th Cir. 2004)(citation omitted)).

Petitioner argues that the failure of his appellate counsel to identify and raise the claims alleged in habeas grounds five through eight is both "cause" and "prejudice" for any default of those claims as detailed in his ineffective assistance of appellate counsel claim in habeas ground nine (Docket No. 14, pp. 21; 27; 34; 37 of 43). Because Petitioner has failed to demonstrate his appellate counsel was ineffective in habeas ground nine, he fails to demonstrate cause sufficient to excuse the default. "[T]he failure to establish cause eliminates the need to consider prejudice." *Cvijetinovic*, 617 F.3d at 840 (quoting *Murray*, 477 U.S. at 494-95). Petitioner does not otherwise argue, and the record does not support, a claim that a fundamental miscarriage of justice would result if Petitioner's claims were barred from federal habeas consideration. *See Murray*, 477 U.S. at 496 ("in an extraordinary case, where a constitutional violation has probably

34

resulted in a conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.")

## V. CONCLUSION

For the reasons set forth above, the Magistrate recommends that the Court deny the Petition for Writ of Habeas Corpus, and terminate the referral to the undersigned Magistrate Judge.

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date:         July 2,  2014

## VI. NOTICE

Please take notice that as of this date the Magistrate Judge's report and recommendation attached hereto has been filed. Pursuant to Rule 72.3(b) of the LOCAL RULES FOR THE NORTHERN DISTRICT OF OHIO, any party may object to this report and recommendations within fourteen (14) days after being served with a copy thereof. Failure to file a timely objection within the fourteen-day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure. The objecting party shall file the written objections with the Clerk of Court, and serve on the Magistrate Judge and all parties, which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. Any party may respond to another party's objections within fourteen days after being served with a copy thereof.

Please note that the Sixth Circuit Court of Appeals determined in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) that failure to file a timely objection to a Magistrate's

35

report and recommendation foreclosed appeal to the court of appeals. In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.